UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAWRENCE E. GREENE,

                    Plaintiff,                  Case No. 1:23-cv-16

v.                                        Honorable Paul L. Maloney

R. REWERTS et al.,

                    Defendants.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of Michigan. On January 5, 2013, that court transferred the matter to this Court for further proceedings. (ECF No. 5.) After the case was transferred, this Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 8.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden R. Rewerts, Hearings Investigator Unknown Kurtz, Sergeant Unknown Walrath, and Corrections Officer Unknown Petersen. Plaintiff indicates that he is suing Defendants in their official and individual capacities. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that on October 13, 2022, after dinner was served, Defendant Petersen told Plaintiff to place his trash and tray outside of his cell. (*Id.*, PageID.6.) Plaintiff did as he was told. (*Id.*) He alleges that Defendant Petersen "picked milk cartons and juice cartons off the floor and threw [them] back through [Plaintiff's] food slot." (*Id.*, PageID.7.) The cartons hit Plaintiff in the face. (*Id.*) Defendant Petersen stated, "How about that b**** and when you write the grievance spell my name right." (*Id.*)

Plaintiff filed a grievance against Defendant Petersen for throwing trash in his face. (*Id.*, PageID.6.) He contends that, subsequently, Defendant Walrath pulled him from his cell and threatened that "things would get a lot worse" for Plaintiff if he did not sign off on his grievance against Defendant Petersen. (*Id.*)

On October 19, 2022, Plaintiff appeared before Defendant Kurtz for misconduct proceedings. (*Id.*, PageID.10.) Plaintiff told Defendant Kurtz that he was hearing impaired and that he could not hear out of his right ear. (*Id.*) He asked Defendant Kurtz for an interpreter. (*Id.*) Defendant Kurtz responded, "You'll be fine just use your good ear." (*Id.*) Plaintiff contends that he was "discriminated against because of [his] disability]" and was not provided the "proper assistance required." (*Id.*)

2

Plaintiff alleges further that on November 3, 2022, Defendant Rewerts came to his cell and directed Plaintiff to "hand over [his] legal work for inspection." (*Id.*, PageID.6.) Plaintiff contends that his legal work was neither returned to him nor sent out to the intended recipients. (*Id.*) Plaintiff claims that Defendant Rewerts retaliated against him for filing a petition against DRF and its staff for "the wrongdoings placed upon" him. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) First Amendment retaliation claims against Defendants Walrath and Rewerts; (2) a First Amendment access to the courts claim against Defendant Rewerts; (3) Eighth Amendment claims premised upon verbal harassment and excessive force against Defendant Petersen; (4) a Fourteenth Amendment due process claim against Defendant Rewerts for the deprivation of his property; (5) a Fourteenth Amendment procedural due process claim against Defendant Kurtz for the denial of an interpreter; and (6) a claim pursuant to the Americans with Disabilities Act (ADA) against Defendant Kurtz for failing to accommodate Plaintiff's hearing impairment. Plaintiff seeks $1000,000.00 in damages from each Defendant. (*Id.*, PageID.11.) He also seeks for Defendant Kurtz to be removed from his job, and for Defendants Petersen, Walrath, and Rewerts to be "penalized for their actions." (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.      Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1.      First Amendment Claims

##### a.      Retaliation

The Court has construed Plaintiff's complaint to assert First Amendment retaliation claims against Defendants Walrath and Rewerts. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has sufficiently pled that he engaged in protected conduct by filing a grievance against Defendant Petersen and a petition against DRF staff regarding various wrongdoings. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

With respect to Defendant Walrath, Plaintiff claims that he threatened that "things would get a lot worse" for Plaintiff if Plaintiff refused to sign off on his grievance against Defendant Petersen. (ECF No. 1, PageID.7.) This threat was entirely vague and unaccompanied by any actual conduct. The Court concludes that such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she

would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (concluding that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Accordingly, Plaintiff's retaliation claim against Defendant Walrath will be dismissed.

Plaintiff contends that Defendant Rewerts confiscated his legal materials, which is sufficiently adverse to satisfy the second prong of a retaliation claim. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). However, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*,

84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening.]" (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Rewerts. He has not presented any facts from which the Court could infer that Defendant Rewerts was aware of any grievances or petitions that Plaintiff had filed and confiscated his legal materials because of that protected conduct. Plaintiff's speculative allegation fails to state a claim; therefore, his First Amendment retaliation claim against Defendant Rewerts will be dismissed.[1]

### b.    Access to the Courts

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim against Defendant Rewerts premised upon his confiscation of Plaintiff's legal work.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

---

[1] To the extent Plaintiff intended to assert a retaliation claim against Defendant Petersen premised upon Defendant Peterson stating "how about that b**** and when you write the grievance spell my name right," Plaintiff fails to state such a claim because he fails to allege that he engaged in any protected conduct prior to Defendant Petersen's alleged actions.

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's sole allegation is that his legal work was not returned to him and that it was not sent to its respective recipients. Plaintiff's complaint is utterly devoid of facts suggesting that he suffered an actual injury to any litigation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's First Amendment access to the courts claim will be dismissed.

### 2.    Eighth Amendment Claims

The Court has also construed Plaintiff's complaint to assert Eighth Amendment claims premised upon verbal harassment and excessive force against Defendant Petersen. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a. Verbal Harassment

The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim premised upon the verbal harassment by Defendant Petersen. Plaintiff contends that Defendant Petersen stated, "How about that b**** and when you write the grievance spell my name right." (ECF No. 1, PageID.7.) While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth

10

Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claim premised upon verbal harassment that Plaintiff asserts against Defendant Petersen.

### b.    Excessive Force

Plaintiff contends that Defendant Petersen threw milk and juice cartons through Plaintiff's food slot and hit Plaintiff in the face with them. (ECF No. 1, PageID.7.) The Court has construed Plaintiff's complaint to assert an Eighth Amendment excessive force claim against Defendant Petersen based upon this alleged act.

There is an objective component and a subjective component to an Eighth Amendment excessive force claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

However, the Court notes that the "absence of serious injury" is relevant to the Eighth Amendment inquiry. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson*, 503 U.S. at 7).

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." [*Hudson*, at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)]. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted). An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*, at 9 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Wilkins*, 559 U.S. at 37–38. The Court added that "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Plaintiff's allegations certainly suggest that Defendant Petersen acted maliciously when he threw milk and juice cartons at Plaintiff's face. However, "[e]very malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action." *See Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011). Plaintiff's complaint is completely devoid of any allegations suggesting that he suffered injury or pain from the incident. While the Court does not condone Defendant Petersen's action, Plaintiff has not alleged that he sustained more than *de minimis* injury. Indeed, Plaintiff alleges no facts regarding any injury or pain that resulted from Defendant Peterson's actions. *See Ivey*, 832 F.2d at 955 (discussing that the Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain"). For

12

these reasons, Plaintiff cannot maintain an Eighth Amendment excessive force claim against Defendant Petersen, and such claim will be dismissed.

### 3.    Fourteenth Amendment Claims

#### a.  Due Process—Deprivation of Property

The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Rewerts premised upon the deprivation of his legal property. Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief

for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Rewerts regarding the deprivation of his property will be dismissed.

**b.      Due Process—Misconduct Proceedings**

The Court has liberally construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim against Defendant Kurtz based upon his denial of Plaintiff's request for an interpreter during misconduct proceedings. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff's complaint is wholly devoid of any facts concerning what misconduct he received and whether he was convicted of that misconduct. In any event, Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence— and he cannot. Plaintiff is serving sentences imposed in 2015 and 2018 for crimes committed in 2014 and 2018. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=958528 (last visited Feb. 22, 2023). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Plaintiff's

14

complaint is also wholly devoid of any facts suggesting that he was subject to an "atypical and significant hardship" as a result of any misconduct conviction. *See Sandin*, 515 U.S. at 487. Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Kurtz will, therefore, be dismissed.

      **B.**    **ADA Claim**

The Court has also construed Plaintiff's complaint to assert a claim under the ADA against Defendant Kurtz based upon Plaintiff's allegation that Defendant Kurtz discriminated against him because of his disability. Specifically, Plaintiff contends that Defendant Kurtz denied him an interpreter during his misconduct hearing even though Plaintiff informed Defendant Kurtz that he was hearing impaired and that he "could not hear out of [his] right ear." (ECF No. 1, PageID.7, 10.) The Court presumes that these claims are brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the RA, 29 U.S.C. § 794(a).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Defendant Kurtz in his official and individual capacity.

Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity

15

can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

Beyond his conclusory allegations, Plaintiff has not set forth facts regarding how the provision of an interpreter was a necessary accommodation for his hearing impairment. For example, Plaintiff does not indicate what type of "interpreter" was needed, and to the extent that he intended to reference a sign language interpreter, Plaintiff has not alleged any facts suggesting that he uses sign language to communicate. Under these circumstances, Plaintiff has failed to allege sufficient facts to support his conclusory assertion regarding the need for an interpreter and how an interpreter, or any other accommodation, was necessary. He has not alleged sufficient facts suggesting that the lack of an accommodation precluded him from fully participating in his misconduct hearing. Plaintiff's vague allegations simply do not permit the Court to infer violations of the ADA. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008). Plaintiff's ADA claim against Defendant Kurtz will, therefore, be dismissed.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 23, 2023                          /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge

17